|  |  |
|---|---|
|  | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| MARK CHRISTENSEN, | |
|---|---|
| Plaintiff, | Case No. C08-5191RBL |
| v. | ORDER ON SUMMARY JUDGMENT |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al, | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment. [Dkt. #44.] Defendant seeks dismissal of each of Plaintiff's five causes of action as articulated in his Amended Complaint. [Dkt. #12]. Plaintiff suggests that the Motion does not address all of the "incredibly specific detailed allegations in his complaint." The facts[1] provided, and the law/fact analysis applicable to them, are difficult to ascertain from the parties' respective filings. The court has been left to mine the record to ascertain what the case and the motion actually involve. The Court has done so, and rules on the Motion as follows.

**A.     Background.**

Plaintiff Christensen began his employment as a Washington State Corrections Officer in 1983.

---

[1] In the future, counsel are urged to use an organizational structure which begins with a chronological statement of relevant facts, followed by an argument in the traditional "IRAC" [Issue, Rule, Analysis, Conclusion] format. Factual statements like the Plaintiff's "stream of consciousness" paragraph, starting on page 15 and concluding on page 20, are not helpful.

At all relevant times, he was employed at the Corrections facility in Shelton, Washington. He claims that throughout his tenure he observed and reported an increase in inmate assaults on correctional officers, and was himself the subject of assault. He claims that these reports were not well received.

In 2005, Plaintiff applied for "assault benefits" following an assault by an inmate. He claims that one of his superiors, Carol Porter, "protested" his benefits and also made inappropriate religious based comments to him. Specifically, Porter told him they needed to have a "come to Jesus meeting." Plaintiff grieved the religious comment, and the grievance was resolved when Porter agreed to withdraw her opposition to Plaintiff's assault benefits. He claims the benefits were not fully paid.

Plaintiff claims he was then subjected to a "tremendous amount of discrimination and retaliation," though his Complaint does not specify the nature of the discrimination[2] or retaliation. Plaintiff's primary complaints appear to be that he was not permitted to apply for assault benefits each time he was assaulted[3]; that the inmate(s) who assaulted him was not prosecuted; and the assault pay benefits he did receive were improperly subjected to income tax withholding by the DOC. He also claims that when he prevailed on his argument that the benefits were not to be taxed, the DOC somehow prevented him from filing an amended tax return, though the mechanism of that is not explained.

Plaintiff claims he is permanently disabled with PTSD and back injuries (though he does not appear to assert claims based on these injuries). He also claims he has suffered emotional distress as the result of his treatment at the hands of the Defendants. Plaintiff also suggests that he was subject to improper discipline, perhaps in retaliation for his complaints about inmate assaults and/or his complaining about what he perceived to be improper taxation of assault benefits. His complaint does not specifically address the factual context of that allegation, though the Defendants appear to know what he is complaining about.

They suggest that Plaintiff was disciplined for getting involved in a physical altercation with a co-worker (Derek Kennedy) in front of inmates and other correctional staff, after Kennedy suggested that all

---

[2] Indeed, it appears Mr. Christensen is a white male. He claims repeatedly that he was a victim of discrimination, but does not ever identify the protected class in which he claims membership. The only potential classes are those relating to a disability, his religion, or perhaps his age. Plaintiff has not claimed he was the victim of age or disability-related discrimination, and has only briefly referenced his religion.

[3] Plaintiff claims instead, somewhat inconsistently, that he was discouraged or prevented from filing reports about inmate assaults because the DOC did not want to publicize the frequency of such events.

of the guards and all Shelton residents were "red necks." Porter initiated an investigation, which was undertaken by Lt. Tony Dunnington. A pre-disciplinary *Loudermill* hearing, with union support for Mr. Christensen, followed. At the end of the hearing (and an extended period for Plaintiff to provide any additional information), he was issued a written letter of reprimand. This letter was based on Plaintiff's inability or unwillingness to de-escalate the situation, and the resulting risk of danger to inmates and staff. The letter was the second lowest form of discipline available.

After receiving the letter, Plaintiff confronted the witnesses to the event about their statements. According to these witnesses, he intimidated them in response to their testimony. They complained, and another investigation was undertaken, this time by a counselor named Don MacWilliams. MacWilliams found that Plaintiff had called one of the officers who gave a statement in the prior investigation, a "cheese eating rat." Plaintiff was given a chance to respond, and another *Loudermill* hearing was held. Plaintiff was given a one month, 5% reduction in pay, from $3583 per month to $3414, effective August 16 to September 15, 2006. [Porter Dec., Dkt. #46 at Ex. P]. It appears that Plaintiff continues to work at the Shelton correctional facility, He filed this suit in state court on or about February 28, 2009, and Defendants timely removed it to this Court. [Dkt. #1].

Defendants seek dismissal of each of the claims enumerated in Plaintiff's amended Complaint [Dkt. #12]: (1) "Retaliation/Discrimination/Hostile Work Environment" in violation of Title VII; (2) "Emotional Distress"; (3) Violation of Civil Rights; (4) Failure to pay wages/benefits (a state law claim); and (5) Fraud /Misrepresentation/Injunctive Relief."

Plaintiff does not agree that these are his only causes of action, and suggests that even granting the motion will not dispose of the case. His complaint, however, asserts these, and only these, causes of action.

Finally, the parties each seek to strike portions of each others' submittals for various evidentiary reasons. Those Motions are DENIED (except where the parties have agreed that a portion should be stricken). In any event, the court has not based its rulings in this Order on any inadmissable material. Specifically, the Plaintiffs' narrative about events occurring prior to February 2006 (for which claims are time barred) has not been considered. Nor has the court relied on hearsay statements for the truth of the matters asserted. It has considered various documents in the context that certain communications were

made, whether true or not.

**B.    Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220. Additionally, this Court need not "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted).

**C.    Burden-Shifting Scheme Under Title VII and RCW 49.60**

Plaintiff's Federal Title VII claims are analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Washington law applies this same burden-shifting scheme to cases under RCW 49.60. *Hill v. BCTE Income Fund-I*, 144 Wn.2d 172, 185-86 (2001)(adopting Title VII analysis from *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), though it does not appear that Plaintiff has asserted state law discrimination claims.

In *McDonnell Douglas*, the Supreme Court articulated a three-part test for assessing the burdens and order of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Second, if the plaintiff succeeds in demonstrating a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

reasons but were a pretext for discrimination. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

### 1. Plaintiff's Title VII Discrimination Claim Fails as a Matter of Law.

Defendants argue that Plaintiff's Title VII discrimination claim fails as a matter of law because Plaintiff does not and cannot establish that he is a member of a protected class.

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles*, 307 F.3d 884, n. 5 (9th Cir. 2002).

Title VII [42 U.S.C. §2000e *et seq*.] protects against discrimination based on specific protected classes: race, color, religion, sex, or national origin. In order to establish a prima facie Title VII case, Plaintiff has the burden of establishing that he is a member of one of these classes. He has not even attempted to do so. Instead, he suggests that he was the victim of discrimination as the result of his "whistle-blowing" about the lack of inmate accountability at the Shelton facility. He does claim that his superior said they needed to have a "come to Jesus meeting," but has not demonstrated that any adverse employment action was the result of any religious discrimination.

Plaintiff has not identified an adverse employment action that he claims was related in any way to his religion. Nor has Plaintiff alleged, much less identified, some other employee with similar qualifications who was treated more favorably than was he.

On this record, Plaintiff cannot establish a prima facie Title VII discrimination claim, even when the facts are (as they must be) viewed in the light most favorable to him. His Title VII religious discrimination claim is insufficient as a matter of law. The Defendant's Motion [Dkt. # 44] on this claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

### 2. Plaintiff's Title VII Retaliation Claim Fails as a Matter of Law.

Defendant seeks summary judgment on Plaintiff's Title VII retaliation claim on a similar basis.

Citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, they argue that Plaintiff's Title VII retaliation claim depends on his ability to establish that he was engaged in a protected activity related to race, color, religion, or national origin, and he cannot do so as a matter of law.

Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a).

The elements of a prima facie retaliation claim are (1) the employee engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1064 (9th Cir. 2002). As with the Title VII discrimination claim, in a Title VII action, the retaliation at issue must relate to race, color, religion, sex, or national origin.[4]

Plaintiff has not identified any Title VII "protected activity." The Plaintiff does not allege, and the Court can find no evidence in the record, that the "adverse employment action" of which Plaintiff complains [the two disciplinary actions] was in any way related to his Christian fundamentalism. Indeed, Plaintiff himself directly ties these actions to his complaints about inmate assaults and assault benefits.

On this record, Plaintiff has not established, and cannot establish, a prima facie Title VII retaliation claim, even when the facts are (as they must be) viewed in the light most favorable to him. His claim is insufficient as a matter of law, the Defendant's Motion [Dkt. # 44] on this claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

**3.      Plaintiff's Title VII Hostile Work Environment Claim Fails as a Matter of Law.**

Defendants argue that Plaintiff's Title VII hostile work environment claim fails because the single

---

[4]Plaintiff has also asserted, broadly, that his Constitutional rights were violated. He does not directly reference the First Amendment, but claims in his Response that his *Proposed* Amended Complaint [Dkt. # 9] referenced the following:
  "(3) 42 USC 1983 - has only been addressed in the context of due process - not free speech[.]
  (Dkt. 9 p1-16 sec. 1.2 to 2.3)"
[Dkt. # 61 at 2]. He also cites a criminal statute, 18 USCA §242, and AmJur CIVIL RIGHTS §208 for the proposition that his speech was protected. [Dkt. # 61 at 7-8] In discussing Plaintiff's Constitutional claims, below, the Court will address the viability of a First Amendment claim.

statement of a religious nature – "we need to have a come to Jesus meeting" – is insufficient as a matter of law to establish the severe or pervasive nature required to support such a claim.

To establish a prima facie hostile work environment claim under Title VII, a Plaintiff must prove that (1) he was subjected to verbal or physical conduct because of his religious beliefs; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003). Plaintiff does not seriously argue or allege that the statement made to him was ever repeated, or was so pervasive or severe such as to alter the conditions of his employment at all, much less in an actionable way under clearly established law in this and other Circuits. As the defendants argue, Plaintiff has not connected his religious beliefs to any alleged discrimination, retaliation, or the work place environment.

On this record, Plaintiff has not established, and cannot establish, a prima facie Title VII hostile work environment claim, even when the facts are (as they must be) viewed in the light most favorable to him. His claim is insufficient as a matter of law, the Defendant's Motion [Dkt. # 44] on this claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

**D.     Plaintiff's State Law Emotional Distress Claims.**

Defendants argue that Plaintiff's state law emotional distress claims are subsumed in his discrimination claim, as negligent infliction of emotional distress is not a stand alone cause of action in employment cases. They cite *Robel v. Roundup Corp.,* 103 Wash.App. 75, 10 P.3d 1104, 1113 (2000) (*quoting Chea v. Men's Wearhouse, Inc.,* 85 Wash.App. 405, 932 P.2d 1261 (1997)) for the proposition that "Washington courts do not recognize a claim against an employer for emotional distress when the only factual basis for emotional distress is the discrimination claim."

To establish this cause of action, the Plaintiff must show: (1) that his employer's acts injured him; (2) the acts were not a workplace dispute or employee discipline; (3) the injury is not covered by the Industrial Insurance Act; and (4) the dominant feature of the negligence claim was the emotional injury. *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 972 (9th Cir., 2002). In Washington, emotional distress is available as an element of damages in a discrimination claim. Claims for negligent infliction of

emotional distress do not stand on their own as separate causes of action in employment cases. *Bishop v. State,* 77 Wn. App. 228, 234-35, 889 P.2d 959 (1995).

Defendants argue that plaintiff's emotional distress claims arise directly from his workplace dispute with the DOC and his superiors and co-workers there, and are directly tied to his discrimination and retaliation claims.

Plaintiff argues that only double damages are prohibited, and that his emotional distress claim is not subsumed into his discrimination claim. He does not address the Defendants' argument, or the cases holding that an employer's decisions regarding employment do not give rise to a separate claim for negligent infliction of emotional distress. His claims for emotional distress are based on the same facts he alleges in support of his discrimination and retaliation claims.

As such, he cannot establish a separate claim for the negligent infliction of emotional distress under Washington law. This "stand alone" claim is not supportable on the record before the Court. Defendants' Motion on this basis is GRANTED and the plaintiff's emotional distress claim is DISMISSED WITH PREJUDICE.

**E.    Plaintiff's Constitutional [Due Process and "§1983"] claims.**

The basis for Plaintiff's Constitutional claim(s) is unclear. Plaintiff alleges "violations" of 42 U.S.C. §1983, but there is no such cause of action. "One cannot go into court and claim a violation of §1983 – for §1983 by itself does not protect anyone against anything." It does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by government officials. *See, e.g., Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)

Defendants correctly point out that Plaintiff has not identified the Constitutional provision he claims is violated, or how, but instead alleges only a "violation of 42 U.S.C. §1983," which is not a valid cause of action. Plaintiff's Complaint does suggest a due process claim. Defendants apparently interpret this to be a substantive due process claim related to the two disciplinary actions taken against Plaintiff within the limitations period – the letter of reprimand and the subsequent one month, 5% reduction in pay.

Defendants argue that the facts surrounding those incidents are, in the context of due process, undisputed. They claim that the investigations and the *Loudermill* hearings, coupled with Plaintiff's ample opportunity to respond to the claims against him, satisfy the requirements of due process as a matter of law.

Plaintiff's Response [Dkt. # 61] does not address a due process claim. If and to the extent his Complaint asserted such a claim, the Defendants' Motion for Summary Judgment on it is GRANTED, and that claim is therefore DISMISSED WITH PREJUDICE.

Plaintiff's Response does allege, for the first time, that he was disciplined and otherwise retaliated against for speaking out on a matter of public concern – namely, the number and severity of inmate assaults, the failure of the DOC to prosecute the inmates responsible, and his complaints about how the DOC handled assault benefits.

Defendants' Reply [Dkt # 70] points out, correctly, that Plaintiff had not previously asserted such a First Amendment claim. However, most of the facts potentially supporting this claim have been present, however awkwardly, since the Plaintiffs' first Complaint. He has not ever articulated the claim at which he has hinted - a First Amendment Retaliation claim. He has, however, plead facts referencing his "speech" as a motivating factor in his treatment.

A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Derochers v. City of San Bernardino*, 572 F.2d 703, 708-709 (9th Cir. 2009) (citations omitted).

It appears that the Plaintiff has plead, or could plead (consistent with the record and his prior allegations) most of these elements. Indeed, if Plaintiff has a retaliation claim at all, it would appear to be most viable under the First Amendment. However, he has not yet plead such a claim.

Rather than dismiss all of plaintiff's Constitutional claims outright, the Court will permit Plaintiff

ORDER
Page - 9

to amend his Complaint to assert such a claim if he so chooses. He should do so within seven days of the date of this order.

Defendant will have 30 days from the date of any such amended compliant to file a dispositive motion testing that claim against the Summary Judgment standard (or the Rule 12(b)(6) standard). All other Constitutional claims implicated in Plaintiff's Complaint are DISMISSED.

**F.     Plaintiff's State Law Wage Claim.**

Plaintiff asserts a claim for wrongfully withheld wages under RCW 49.52.070, based on his claim that the assault benefits which were paid to him were improperly subject to withholding. Plaintiff argues that there is $1251.05 at issue on his wilful/wrongful withholding claim. [Dkt. #61 at 23]. He argues that the Defendants were aware (because he told them) that assault benefits were not subject to withholding, and then withheld a portion of his wages anyway. It is not clear whether or how the DOC did so, and it is clear from the record that none of the individuals had any ability to so address Plaintiff's withholding. This claim is DISMISSED as to the individual defendants.

Defendants argue that Chapter 49.52 RCW applies to wages, and not to improper tax withholding. There does not seem to be a case on point in Washington, either supporting or refuting Defendants' argument. Defendants also argue that even if the statute applies to withholding, in order to sustain his claim for double wages, Plaintiff must prove that the failure to pay was wilful. They claim that the failure to pay is not wilful when it is the result of a bona fide dispute. *See McAnulty v. Snohomish School Dist*., 515 P.2d 523 (1973). This presents a factual issue for a Jury. The Defendants' Motion for Summary Jdugment on the Plaintiff's wage claim is DENIED.

**G.     Plaintiff's State Law Fraud and Misrepresentation Claims.**

Plaintiff alleges that the DOC committed fraud when it claimed it was not aware that assault benefits were not subject to withholding. Defendant seeks summary dismissal of this claim based on the high standard for establishing a fraud or misrepresentation claim, and on the fact that the misrepresentation was not made to or relied upon by the Plaintiff, even if a misrepresentation was made.

Defendant correctly argues that the Plaintiff must receive and act on the representation of an existing fact in order to establish a prima facie fraud claim:

> A claim of fraud is established by clear, cogent, and convincing evidence of all nine elements of fraud, which are (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon *by the plaintiff*; (6) *plaintiff's* ignorance of its falsity; (7) *plaintiff's* reliance on the truth of the representation; (8) *plaintiff's* right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 504, 925 P.2d 194 (1996) (emphasis Defendants').

Plaintiff does not address this claim or the elements of a fraud or misrepresentation claim in his Response. The Defendants' Motion on this claim is GRANTED and Plaintiff's "fraud, misrepresentation and injunctive relief" claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

Defendants' Motion for Summary Judgment [Dkt. #44] is GRANTED on Plaintiff's Title VII claims, his Federal Constitutional Claims, and his state law Emotional Distress and Fraud claims. Those Claims are DISMISSED WITH PREJUDICE. The Motion is similarly GRANTED with respect to Plaintiff's state law wage claim against the individual defendants.

The Motion is DENIED as to Plaintiff's state law wage claim against the DOC. Finally, Plaintiff is granted leave to amend his Complaint to assert a First Amendment Retaliation claim consistent with this ORDER, within SEVEN days of the date of this ORDER. If they so choose, Defendants shall file a dispositive Motion on this claim within 30 days of the date of the filing of such a Complaint.

IT IS SO ORDERED.

DATED this 26th day of January, 2009.

                                                  RONALD B. LEIGHTON
                                                  UNITED STATES DISTRICT JUDGE