HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK CHRISTENSEN,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, et al,

Defendants.

Case No. C08-5191RBL

ORDER ON SECOND MOTION FOR
SUMMARY JUDGMENT
[Dkts. # 79 & 82]

THIS MATTER comes before the Court on Defendants' Second Motion for Summary Judgment [Dkt. #82]. Defendants seek dismissal of Plaintiff's only remaining claim for First Amendment retaliation. Defendants Second Motion for Summary Judgment is **GRANTED**. The reasons for the Court's decision are set forth below.

## BACKGROUND

Plaintiff Christensen began his employment as a Washington State Corrections Officer in 1983. At all relevant times, he was employed at the Department of Corrections (DOC) facility in Shelton, Washington. He filed this lawsuit in state court on our about February 28, 2008, and Defendants timely removed it to this Court. [*Notice of Removal*, Dkt. #1]. Defendants sought summary judgment dismissal of each of the claims in Plaintiff's Amended Complaint [Dkt. #12]: (1) "Retaliation/Discrimination/Hostile Work Environment" in violation of Title VII; (2) "Emotional Distress"; (3) Violation of Civil Rights; (4) Failure to pay wages/benefits (a state law claim); and (5) Fraud /Misrepresentation/Injunctive Relief." *Id*.

The Court granted Defendants' first motion for summary judgment in part, dismissing all claims but Plaintiff's 42 U.S.C. § 1983 claim based on First Amendment retaliation. [*Order on (First) Summary Judgment*, Dkt. #72]. Plaintiff had plead facts referencing his "speech" as a motivating factor in DOC's treatment of him, but had failed to allege a First Amendment retaliation claim until his response to Defendants' motion for summary judgment. *Id.* Rather than dismissing all of Plaintiff's constitutional claims outright, the Court permitted Plaintiff to amend his complaint to assert a First Amendment retaliation claim within seven days of that Order. *Id.* at 10. Plaintiff timely filed a Second Amended Complaint [Dkt. #73], and although that complaint identified allegedly retaliatory disciplinary actions, it did not identify any allegedly protected speech upon which that retaliation was based.[1] Plaintiff has since rectified this deficiency in his Fourth Amended Complaint [Dkt. #87].

The gist of Plaintiff's First Amendment retaliation claim is that he was disciplined and otherwise retaliated against for speaking out on a matter of public concern, namely, that the DOC (1) did not prosecute inmates who assaulted him and other guards, and (2) improperly withheld income tax on his assault pay benefits. [*Fourth Amended Complaint*, Dkt. # 87 at 20]. The following facts (only those facts relevant to Plaintiff's First Amendment Retaliation claim) are set forth in a light most favorable to Plaintiff:

### A.    Speech Related to Taxation of Assault Benefits.

Plaintiff claims that he complained to DOC and the Department of Labor and Industries (L & I)[2] about non-payment of, and improper taxation of, inmate assault benefits he received as a result of a March 2005 assault against him. According to DOC Policy, an employee who is injured by an inmate assault in the performance of his/her official duties may receive benefits while recovering from the injury. [*Logerwell Dec. in Support of Defendant's (First) Motion for Summary Judgment*, Dkt # 45, Ex. C]. An employee's assault benefits equal the difference between the benefits paid by L & I and the employee's base salary. *Id.* While the DOC assault benefits portion is considered "salary" and is fully taxable, the L&I portion is not. *Id.* at Exs.

---

[1]Plaintiff's Second Amended Complaint also re-pleaded claims and defendants that had already been dismissed with prejudice in the Court's Order on (First) Summary Judgment. On February 16, 2010, Defendants' filed a motion to strike and/or dismiss all claims and defendants that had already been dismissed with prejudice. [*Defendants' Motion to Strike and/or Dismiss*, Dkt. # 79]. Plaintiff attached a proposed Third Amended Complaint to his response to Defendants' Motion, which only differed in that it deleted those causes of action. [*Plaintiff's Response to Defendant's Motion to Strike and/or Dismiss*, Dkt. # 81, Ex. 2]. Defendants' Motion to Strike [Dkt. #79] is therefore DENIED as moot.

[2] L & I declined to investigate this allegation. [Dkt. #99, Ex. 3, at 4].

C & F.  Plaintiff maintains that the DOC had improperly deducted taxes from the benefits he received from L&I, resulting in $1251.05 in wages that were improperly withheld. *Id*. at Ex. D.

The record reveals two instances in which Plaintiff spoke to others regarding the allegedly improper taxation of his assault benefits.  First, Plaintiff emailed four DOC payroll officials on October 27, 2005.  Plaintiff was concerned that DOC improperly taxed the portion of his benefits received from the Department of Labor and Industries, which is non-taxable:

> Since all LEI [sic] funds received for injuries are nontaxable why has DOC SUBMITTED TAXES ON THESE FUNDS?  I know you owe me a refund on these taxes you wrongly withheld.  Please resolve.

[Dkt. #45, Ex. E].

Second, Plaintiff claims that he filed a formal "Whistleblower"complaint with the State Auditor's Office, almost a year and a half later, on April 10, 2007.   Although neither the date nor the content of this complaint is reflected in the record, an August 3, 2007 State Auditor's Report of Whistleblower Investigation responding to this complaint found reasonable cause to believe that DOC improperly taxed some employees' assault benefits.  [Dkt. #45, Ex. F].  The State Auditor's Office found an error, concluding that: "[a] manual adjustment in the system was necessary to exclude the Labor and Industries portion of the paycheck; however, the payroll employee thought the system made the adjustment automatically, resulting in taxation of the entire sum of the paycheck." *Id*.

**B.      Speech Related to Inmate Assault.**

In March 2005,[3] Plaintiff was assaulted and unable to return to work until October 2005, eight months after his injury.  [*Christensen Dec. In Opposition to Defendants' Second Motion for Summary Judgment*, Dkt. # 99, Ex. 3, at 2].  Plaintiff claims that during this time period, he organized a campaign called "Stop Inmate Violence Now," aimed at raising awareness about DOC's failure to prosecute inmates for assaulting staff members.  *Id*.  Plaintiff claims that he spoke out several times in furtherance of this campaign, including visiting Western Washington prosecutors offices, *id*. at 3; rallying at the state capitol, *id*. at 6-7; speaking at union meetings and a Filipino-American Association meeting, *id*. at 10; complaining to L & I,  *id*. at 4; and forming a group of correctional officers interested in DOC's failure to prosecute inmates, *id*. at 2-3.

Although Plaintiff maintains that he "has long been an outspoken advocate" against inmate assaults,

---

[3]Some documents in the record indicate that Plaintiff was assaulted in April 2005.

ORDER
Page - 3

the record reveals that Plaintiff's contact with DOC officials about inmate violence was limited to 2005.

Plaintiff recalls asking WCC Chief Investigator Steven DeMars to ensure that his March 2005 assault was

prosecuted.  *Id.* at 3.  Plaintiff also contacted DOC officials in a November 21, 2005 memorandum to

Lieutenant Clan Jacobs, wherein Plaintiff described his new campaign:

> DOC has got to change from its current status quo as a Reactive Agency to Inmate violence to a progressive and Proactive Agency to Inmate violence.  DOC should embark on a new initiative called **Stop Inmate Violence Now**.

[*Christensen Dec. in Opposition to Defendant's (First) Motion for Summary Judgment*, Dkt. #63-2, Ex. D].

Plaintiff again voiced his concerns to Chief Investigator Steven DeMars on November 23, 2005, but

this time in an email that copied several other DOC employees and Governor Christine Gregoire:

> Why have the last two Inmates who attacked and permanently injured Me and the Staff I supervise in R-1 Unit at the Washington Correction Center not been charged with assault by the Mason County Prosecutors Office.  You told me you were going to refer them.  What date did you make that referral?
> How many other inmates who have attacked and assaulted Staff at WCC not been charged for the assaults?  Why?  What date did you make the referrals?
> How many more Staff will be hurt before these Inmates or any Inmate is brougt to justice?  It is just a matter of time before a staff is going to get killed!  God Forbid.
> Are all the disabilities I now suffer from all in vain?
> Please Governor!  Can you tell Me Why?  I want to know.
> Your Humble Servant who walks the line.  Mark Christensen: [sic]

*Id.* Ex. E.  Plaintiff also sent an email to co-workers on December 11, 2005, explaining a threat to corrections

officers' safety: "I have advised R-1 Staff to use extreme caution in dealing with this Dangerous and Violent

Offender time bomb. Tick Tick Tick Tick Tick . . ." [Dkt. #99, Ex. 3, Ex. B].

### C.  Disciplinary Actions.

Plaintiff maintains that Defendants participated in "a long course of action" to prevent Plaintiff from

speaking out on prosecution of inmate assaults and taxation of assault benefits.  [Dkt. # 99 at 9].   However,

because Plaintiff's only remaining claim is for retaliation for protected speech, events occurring before

Plaintiff's first allegedly protected speech occurred are irrelevant.[4]

Plaintiff apparently believes that Superintendents Porter and Waddington knew[5] about his speech

---

[4]Plaintiff filed this lawsuit on February 28, 2008.  Thus, the three-year statute of limitations began to run on February 28, 2005.  Because Plaintiff's speech began after his March 2005 assault, Plaintiff's first speech appears to be within the limitations period.

[5]Plaintiff recalls that Superintendent Waddington told him that Plaintiff's speech about prosecution of inmate assaults outside of work was inappropriate.  [Dkt. # 99, Ex.3, at 10-11].

activities, and "spearheaded attacks" against him in retaliation for his speech. [Dkt. # 99, at 3]. Specifically, Plaintiff claims that he was (1) given an improper reprimand and reduction in pay, (2) subjected to "sham investigations," (3) denied accommodations for his disabilities,[6] and (4) threatened and harassed,[7] as punishment for his speech. *Id.* at 8, 11. He also insists that Superintendent Porter consistently retaliated against him for speaking out, "even before the speech campaign occurred," and continued to follow this pattern when Plaintiff "made what is undeniably the first in a series of public speeches." [Dkt. #99, at 15].

Defendants contend that Plaintiff was investigated and disciplined for getting involved in a physical altercation with a co-worker, Derek Kennedy, in front of inmates and other correctional staff on February 26, 2006, after Kennedy suggested that all of the guards and all Shelton residents were "red necks." Porter initiated an investigation, which was undertaken by Lt. Tony Dunnington. A pre-disciplinary *Loudermill* hearing, with union support for Plaintiff, followed. At the end of the hearing (and an extended period for Plaintiff to provide any additional information), he was issued a written letter of reprimand. [Dkt. #83 at 74-75]. This letter was based on Plaintiff's inability or unwillingness to de-escalate the situation, and the resulting risk of danger to inmates and staff. The letter was the second lowest form of discipline available.

After receiving the letter, Plaintiff confronted the witnesses to the event about their statements. According to these witnesses, he intimidated them in response to their testimony. They complained, and another investigation was undertaken, this time by a counselor named Don MacWilliams. MacWilliams found that Plaintiff had called one of the officers who gave a statement in the prior investigation, a "cheese eating rat." Plaintiff was given a chance to respond, and another *Loudermill* hearing was held. Plaintiff was

---

   [6] After Plaintiff returned to work after the March 2005 assault, he requested an ergonomic chair. Plaintiff claims that he was denied that chair "for many months." [Dkt. #63, at 19-20]. Similarly, Plaintiff claims that his Post-Traumatic Stress Disorder began to interfere with his job sometime after the March 2005 assault. Plaintiff recalls requesting additional training that would allow him to perform his job despite his disability around January 5, 2006. Plaintiff believes that the hour-long training on data entry he received as an accommodation was inadequate, and led to more job responsibilities and added stress. [Dkt. # 63, at 24-26]. The facts underlying this allegation are discussed *infra*, at pages 13-14.

   [7]For example, Plaintiff recalls that soon after he sent the November 23, 2005 email to Chief Investigator DeMars, Superintendent Porter chastised DeMars for not reporting inmate assaults on staff. Plaintiff claims that Chief Investigator DeMars told Plaintiff that he would never forgive him for what he just did to him, and called Plaintiff a "dead man walking" as far as his career at DOC is concerned. [Dkt. # 63, at 23].
   He also maintains that other officers "were allowed to and in fact ordered to harass plaintiff without fear of consequences." [Dkt. #99, at 11]. For example, Plaintiff insists that other DOC employees were allowed to "spread rumors" about Plaintiff, but Plaintiff was not allowed to do the same. [Dkt. #63, at 36].

given a one month, 5% reduction in pay, from $3583 per month to $3414, effective August 16 to September 15, 2006. [*Porter Dec.*, Dkt. #83 at 69-73].

In both instances, Defendant Porter was solely responsible for disciplining Plaintiff.  [*Porter Dec. in Support of Defendants' (Second) Motion for Summary Judgment*, Dkt. #84].  Porter claims that the discipline had nothing to do with Plaintiff's speech on assault benefits and inmate assaults; rather, it had to do with Plaintiff's altercation with Officer Kennedy in the dining hall with Kennedy on February 26, 2006.  *Id.*

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.  Additionally, this Court need not "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted).

### B.    Motions to Strike

As an initial matter, both parties have moved to strike materials from the record.  Plaintiff renewed the motion to strike he asserted in his (First) Motion for Summary Judgment. [*Plaintiff's Response to Defendant's (Second) Motion for Summary Judgment*, Dkt. #99 at 4].  Plaintiff moved to strike several "investigative summaries" submitted by Defendant in support of their motion for summary judgment as hearsay.  *Id.*  The Court has already ruled on this Motion.  [*Order on (First) Summary Judgment*, Dkt. #72 at 3].  Plaintiff's Motion to Strike is **DENIED**.

Defendants have similarly moved to strike portions of Plaintiff's materials for various evidentiary reasons. [*Defendants' Reply and Motion to Strike*, Dkt. #100 at 9-10].  Specifically, Defendants argue (1) that Mr. Bonin's Timeline is not admissible because it is unnecessary, presents argument, and references inadmissible hearsay; (2) that Exs. 1-4 to Mr. Bonin's Declaration have not been authenticated; (3) events occurring before Plaintiff's first allegedly protected speech are irrelevant; and (4) Bonin and Christensen's declarations are based on inadmissible hearsay.  *Id.*   Defendants' Motion to Strike is **DENIED**.

In any event, the Court has not based its rulings in this Order on any inadmissible material.  The Court has not relied on hearsay statements for the truth of the matters asserted.  It has considered various documents in the context that certain communications were made, whether true or not.  The Plaintiffs' narrative about events occurring prior to the first allegedly protected speech has not been considered.

**C.      The DOC is not a Person Subject to Suit under 42 U.S.C. § 1983.**

Defendants argue that Plaintiffs' 42 U.S.C. § 1983 First Amendment Retaliation claim against DOC should be dismissed because it is not a person subject to suit under that statute. [Dkt. #82, at 9].  Indeed, the State, its agencies, and state officials sued in their official capacity are not persons subject to suit under § 1983.  *See Will v. Michigan Dep't. Of Soc. Servcs.*, 491 U.S. 58 (1989).  Thus, Defendants' motion to dismiss  Plaintiffs' 42 U.S.C. § 1983 claim based on First Amendment Retaliation against the DOC is **GRANTED,** and this claim is **DISMISSED WITH PREJUDICE**.

**D.      Plaintiff's First Amendment Retaliation Claim**

The First Amendment prohibits state retaliation against a public employee for speech made as a citizen on a matter of public concern.  *Connick v. Myers*, 461 U.S. 138 (1983).  A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Derochers v. City of San Bernardino*, 572 F.3d 703, 708-709 (9th Cir. 2009) (citations omitted).

**(1)      Plaintiff's Speech Regarding Taxation of Benefits was not of Public Concern.**

Defendant argues that Plaintiff's speech regarding the taxation of his assault benefits is not constitutionally protected because it is not a public concern. [*Defendants' Second Motion for Summary*

*Judgment*, Dkt. #82, at 11].

A plaintiff bears the burden of establishing his speech addressed an issue of public concern. *Desrochers v. City of San Bernadino*, 572 F.3d 703, 709 (9th Cir. 2009). If he cannot, then the First Amendment is not implicated at all, and it is unnecessary to scrutinize the reasons for an employee's adverse employment action. *Connick v. Myers*, 461 U.S. 138, 146 (1983). Courts focus on the "content, form, and context" of the speech at issue "as revealed by the whole record." *Id.* at 147-48. Generally speaking, "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" are of public concern. *Desrochers*, 572 F.3d at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1113 (9th Cir. 1983)). "On the other hand, speech that deals with 'individual personnel disputes and grievances' and would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Desrochers*, 572 F.3d at 710 (quoting *McKinley*, 705 F.2d at 114).

Here, Plaintiff spoke out on two instances regarding the allegedly improper taxation of his assault benefits: first, in an email to DOC payroll officials on October 27, 2005, concerning the allegation that DOC improperly taxed the portion of his benefits received from L&I, and second, in a formal "Whistleblower" complaint filed with the State Auditor's Office.

Plaintiff attempts to characterize these grievances as necessarily implicating issues such as "compensation," "funding," and "the effect of public safety on the cost cutting measures." [*Plaintiff's Response to Defendants Second Motion for Summary Judgment*, Dkt. #99 at 16]. The Court is not persuaded. The Ninth Circuit has never held that "a simple reference to government functioning automatically qualifies as speech on a matter of public concern." *Desrochers*, 572 F.3d at 711. Rather, "passing references to public safety[,] incidental to the message conveyed" weighs against a finding of public concern. *Desrochers*, 572 F.3d at 711. Courts focus on "whether the public or community is likely to be *truly interested* in the particular expression, or whatever is more probably viewed as essentially a private grievance." *Id.* at 713 (emphasis in original).

It is true that a "Whistleblower" complaint may be evidence of a broader public concern, but this is not the case here. Plaintiff's October 27, 2005 email to the DOC payroll department, stating, "I know you owe me a refund on these taxes you wrongly withheld," indicates that Plaintiff's complaints about payroll policies were a private grievance rather than a public concern. The content, form, and context of Plaintiff's

email strongly suggests that Plaintiff was motivated not by a public purpose, but rather by receiving his own private compensation.  Furthermore, the Court cannot say that the public would be truly interested that taxes had been improperly deducted from Plaintiff's paycheck while he was on leave from March 2005 to October 2005.  No broader social concern was raised or implicated by Plaintiff's speech.

Defendant cites to an unpublished case, *White v. Nevada*, 312 Fed. Appx. 896, 2009 WL 424585 (C.A.9 (Nev.)), in which the Ninth Circuit ruled that officers "complaints regarding payroll policy arise from an 'individual personnel dispute [] and grievance []' and would be of no relevance to the public's evaluation of the performance of the DOC."  *Id.* at 2.  Although this case is not binding on the Court, it is especially persuasive here, because the improper taxation of Plaintiff's benefits was a clerical error in the payroll office, not an issue of broader social concern.

While Plaintiff's speech about the prosecution of inmate assaults may be of a public concern, his grievances about the taxes improperly withheld from his assault benefits are not.  Thus, Plaintiff's complaints about improper taxation of his assault benefits is not protected speech, and Plaintiff's claim for First Amendment retaliation based on that speech is **DISMISSED WITH PREJUDICE**.

**(2)      Plaintiff's Workplace Speech on Inmate Assaults was Made in his Official Capacity.**

Defendant claims that Plaintiff's speech regarding inmate assaults occurred within Plaintiff's capacity as a public employee and is not constitutionally protected.  "Speech which owes its existence to an [public] employee's professional responsibilities is not protected," and a plaintiff has the burden of showing the speech was spoken in Plaintiff's capacity of a private citizen and not a public employee. *Garcetti v. Ceballos,* 547 U.S. 410, 421-22 (2006); *Huppert v. City of Pittsburg*, 574 F.3d 696, 703 (9th Cir. 2009) (internal quotation marks omitted).  "Statements are made in the speaker's capacity as [a] citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (quoting *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d at 1127 n.2).

"While 'the question of the scope and content of a plaintiff's job responsibilities is a question of fact,' the 'ultimate constitutional significance of the facts as found' is a question of law." *Id.*  In evaluating whether a plaintiff spoke as a private citizen, a court must "assume the truth of the facts as alleged by the plaintiff with respect to employment responsibilities." *Id.*  If the plaintiff "had an official duty to utter the speech at issue, then the speech is unprotected." *Id.*

1      Plaintiff cites *Eng v. Cooley* for the proposition that because Plaintiff was not paid to investigate or

2  complain about inmate assaults, his speech was not a part of his official job duties and thus was not protected.

3  Plaintiff overstates the law in that case. *Eng* did not say that *all* complaints are outside the realm of a public

4  employee's job duties. In *Eng*, the questionable speech consisted of the plaintiff's attorney's communications

5  with the press regarding retaliation against the plaintiff and the plaintiff's complaints about allegedly

6  improper activity by his supervisor that was outside the scope of his supervisor's responsibilities. *Id*. at 1065-

7  66.  The Ninth Circuit concluded that the plaintiff's  "version of the facts plausibly indicate[d] that he had

8  no official duty to complain" about either of those events.  *Eng,* at 1073.

9      Here, while Plaintiff spoke as a private citizen when he participated in speech activities outside the

10  workplace, he spoke as a public official when he alerted DOC officials of his concerns inside it.   It is true

11  that Plaintiff had no official duty to visit prosecutors offices and attend meetings and rallies in the community

12  to raise awareness about DOC's failure to prosecute inmate assaults.  *See Frietag v. Avers*, 468 F.3d 528, 545

13  (9th Cir. 2006) (noting that a female prison guard spoke as a citizen when she communicated with her state

14  senator and an inspector general about the state's alleged failure to eliminate sexual harassment).   However,

15  Plaintiff has failed to present any facts plausibly indicating that his inter-office emails and memoranda were

16  not the product of performing the tasks he was paid to perform.

17      In this case, Defendants have presented evidence that Plaintiff's job responsibilities included ensuring

18  the safety of prison staff.  [*Porter Dec. in Support of Defendants' (Second) Motion for Summary Judgment*,

19  Dkt. #84, at 4].  Writing inter-office emails and memoranda raising concerns about the safety of prison staff

20  is within that capacity as a public employee.   This is especially so, given that Plaintiff addressed his

21  memorandum to his supervisor, Lieutenant Jacobs, on DOC letterhead and in his official capacity as Sargent

22  Mark Christensen,  [Dkt. # 63-2, Ex. D], and sent the email to DOC officials and Governor Gregoire from

23  his DOC email account. *Id*. at Ex. E.  Aside from his bald assertion that complaining about the lack of

24  prosecution of inmate assaults or benefits was never included in his job description, Plaintiff has not presented

25  any evidence disclaiming Defendant's characterization of his official job duties. [Dkt. # 99, Ex. 3, at 1].  This

26  assertion is insufficient to survive summary judgment.  *See FTC v. Stefanchick*, 559 F.3d 924, 929 (9th Cir.

27  2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both legally

28  insufficient to withstand summary judgment.").

      Although there is no evidence indicating that Plaintiff was *required* to speak out about prosecution

ORDER
Page - 10

of inmate assaults, his speech in workplace memoranda and emails was made as a result of performing the tasks he was paid to perform.  Indeed, Plaintiff himself admits that his speech was "designed to make the workplace safer for all DOC personnel."  [Dkt. #99, at 10].  Plaintiff's workplace speech regarding prosecution of inmate assaults is not protected speech, and Plaintiff's claim for First Amendment retaliation based on that speech is **DISMISSED WITH PREJUDICE**.

**(3)    Ms. Porter Would Have Taken the Same Adverse Employment Action Absent Plaintiff's Speech.**

Defendants rely on the *Mt. Healthy* defense to argue Plaintiff's claim fails because Superintendent Porter would have taken the same disciplinary actions even if Plaintiff had not spoken out on prosecution of inmate assaults outside the workplace–Plaintiff's only protected speech.

Under *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977), the government bears the burden of demonstrating "that it would have reached the same decision even in the absence of the Plaintiff's protected conduct." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002).   This question "asks whether the adverse employment action was based on protected or unprotected activities, and if the state would have taken the adverse action if the proper reason alone had existed." *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009) (citing *Mt. Healthy*, 429 U.S. at 287).  The *Mt. Healthy* but-for causation inquiry is a question of fact. *Id.*  Thus, Plaintiff's First Amendment retaliation claim fails if Defendants can prove, without dispute by Plaintiff, that  the adverse employment decision would have been made even if the Plaintiff did not engage in protected speech. *See Mt. Healthy*, 429 U.S. at 287.

Defendants identify two 2006 disciplinary actions–a letter of reprimand and reduction in pay–as the only relevant adverse employment actions.  Plaintiff suggests that these disciplinary actions are "only a fraction" of the retaliation taken against him, claiming that he was also subjected to  "sham investigations," denial of accommodations for his disabilities, and verbal harassment.   [Dkt. #99, at 8].

**a.    Defendants Would Have Investigated Plaintiff, Reprimanded him, and Reduced his Pay, in the Absence of His Speech.**

Plaintiff argues that Defendants retaliated against him for speaking out on inmate assaults by conducting investigations, issuing a letter of reprimand, and reducing his pay.  Superintendent Porter insists that she acted alone and with sole authority when she made these employment decisions.  She also insists that she would have reached the same decisions even in the absence of Plaintiff's speech because those decisions

were made in response to Plaintiff's February 26, 2006 altercation with Officer Kennedy.   [Dkt. #84, at 1-2].
Porter claims that Plaintiff's position on inmate violence played no role in her disciplinary decisions.   *Id*.

Plaintiff argues correctly that the Court cannot rely simply on Porter's blanket assertions.   But even
viewing the facts in the light most favorable to Plaintiff, the timing and content of communications regarding
those investigations and resulting disciplinary actions substantiates Porter's claim that she would have
imposed the same discipline regardless of the speech.   Within a day or two of Plaintiff's February 26, 2009
altercation with Officer Kennedy, Porter assigned Lt. Dunnington to investigate the incident.   [*Porter Dec.
in Support of Defendants' (First) Motion for Summary Judgment*, Dkt #46, at 3; *Logerwell Dec. in Support
of Defendant's (First) Motion for Summary Judgment*, Dkt # 45, Ex. H].   Dunnington completed that
investigation, and on April 25, 2006, Plaintiff was advised of the potential disciplinary action against him.
*Id*. at Ex. I.   On July 20, 2006, Plaintiff was delivered a letter of reprimand, which identified the February 26,
2006 altercation between Plaintiff and Officer Kennedy as the basis for the action. *Id*. Ex. Q.

On June 30, 2006, Plaintiff was again advised of potential disciplinary action against him, this time
for an April 30, 2006 incident in which Plaintiff read out loud excerpts from the Dunnington investigation
to co-workers, and called Officer Wilsbach a "'rat bastard cheese eater.'"   *Id*. at Ex. J.   On July 31, 2006,
Plaintiff was given an official notification of reduction in pay, from $3,585 to $3,414 from August 16, 2006
to September 15, 2006, identifying the April 30, 2006 incident between Plaintiff and Wilsbach as the basis
for the discipline.   *Id*. Ex. P.

Defendants have successfully demonstrated that even absent the questioned speech, Superintendent
Porter would have initiated the two investigations and made the same disciplinary decisions.   It is clear that
the investigations and disciplinary actions were implemented close on the heels of Plaintiff's February 26,
2006 argument with Officer Kennedy.   Plaintiff, however, has failed to assert any facts to the contrary.   Nor
has he established a causal link between his protected activity and the adverse employment actions.   This is
especially true, given that Plaintiff insists that Ms. Porter retaliated against him even before he began
speaking outside of work in furtherance of his "Stop Inmate Violence Now" campaign, the only potentially
protected speech. [Dkt. #99, at 15].   Viewing the facts in a light most favorable to the Plaintiff, no reasonable
jury could conclude that the two investigations and two disciplinary actions taken against Plaintiff were a
result of his speech on inmate violence, and not a result of his unprofessional behavior.   Plaintiff's claims
for First Amendment retaliation based on these decisions are **DISMISSED WITH PREJUDICE.**

1    **b.    Plaintiff's Alleged Workplace Harassment is not an Adverse Employment Action.**

2    Plaintiff claims that he was harassed in retaliation for his speech.  However, Plaintiff has cited no

3    authority to support the assertion that conversations with co-workers, even if heated, amount to an adverse

4    employment action or are otherwise actionable as retaliatory behavior.  An adverse employment action is one

5    that is "reasonably likely to deter" an employee from engaging in constitutionally protected speech.

6    *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003).  "[M]ere threats and harsh words are

7    insufficient" to constitute an adverse employment action.  *See Nunez v. City of Los Angeles*, 147 F.3d 867,

8    875 (9th Cir. 1998).  "The workplace is not a cocoon, and those who labor in it are expected to have

9    reasonably thick skins–thick enough, at least, to survive the ordinary slings and arrows that workers routinely

10   encounter in a hard, cold world."  *Suarez v. Pueblo Intern., Inc.*, 229 F.3d 49, 54 (1st Cir. 2000).

11   Here, the workplace rumors and heated exchanges Plaintiff has identified are nothing more than

12   "mere threats and harsh words," words that are often spoken in a corrections facility and are not enough to

13   deter an employee from engaging in protected speech.  Thus, Plaintiff's claims for First Amendment

14   retaliation based on workplace harassment are **DISMISSED WITH PREJUDICE.**

15   **c.    Plaintiff's Remaining Grievances, including his Claim that He Was Denied**

16   **Accommodations for His Disability in Retaliation for his Speech, are Dismissed.**

17   Among other grievances, Plaintiff complains that he was denied accommodations for his disabilities

18   in retaliation for his speech. Plaintiff claims that he requested an ergonomic chair on October 13, 2005, after

19   he returned to work after the March 2005 assault.  He claims that Vickie Skeers, the WCC Liaison to L &

20   I, agreed to furnish him an ergonomic chair and workstation, but that he was denied those furnishings "for

21   many months." [Dkt. # 63, at 19-20; Ex. 4, at 3].  Despite the fact that Plaintiff was given a new workspace

22   approximately a month and half after his request, Plaintiff's claim fails because neither Vickie Skeers, WCC,

23   nor L & I are parties to this action, and Plaintiff has failed to identify a defendant who was involved in the

24   delayed accommodation.  Nor does he provide any evidence linking the delay in workspace accommodations

25   with his protected speech.

26   Plaintiff also claims that shortly after he returned to work in October 2005, his Post-Traumatic Stress

27   Disorder (PTSD) began to interfere with his job.  He recalls that on January 5, 2006, he requested additional

28   training, which he believed would allow him to adequately perform his job despite this disability.  [Dkt. #63,

at 24-26].  Plaintiff believes that the hour-long data entry training he received as an accommodation was

inadequate, and led to more job responsibilities and added stress:

> Corrections Officer Salinas was chosen to provide the required training.  Officer Salinas assessed and reported to Lt. Cottom that within 4-5 hours of training he would have myself and the computer I used capable of fully functioning in proper OBTS operation.  However, Officer Salinas was given only 1 hour to provide me training by Lt. Cottom.  At that time Management was well aware that I could not perform critical parts of my job requirements due to this disability.

[Dkt. #63, at 25].

This is not admissible evidence.  And even if it was, Plaintiff has presented no evidence whatsoever indicating that Plaintiff was given a shortened training session because he engaged in protected speech.

Finally, Plaintiff has cited no authority to support the assertion that either the delay or inadequacy of his accommodations amounts to an adverse employment action, or is  "reasonably likely to deter" an employee from engaging in constitutionally protected speech.  Thus, Plaintiff's claim for First Amendment retaliation based on denial of accommodations for his disability are **DISMISSED WITH PREJUDICE.**  Any remaining claims for First Amendment retaliation based on any other grievances are **DISMISSED WITH PREJUDICE** for the same reason.[8]

### CONCLUSION

Defendants' Motion for Summary Judgment [Dkt. #82] is **GRANTED**, and Plaintiff's First Amendment Retaliation claim is **DISMISSED WITH PREJUDICE**.  Defendants' Motion to Strike and/or Dismiss [Dkt. #79] is **DENIED** as moot.  All claims except for those state law claims articulated in Plaintiff's Fourth Amended Complaint are **DISMISSED**.


IT IS SO ORDERED.

Dated this 28th day of April, 2010.



RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[8]Defendants also argue that they are entitled to qualified immunity as to the First Amendment Retaliation claim.  In light of the Court's ruling on this claim, this part of the motion is moot.